

NUMBER 13-13-00504-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE ROSARIO GALLEGOS

On Petition for Writ of Mandamus.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Garza**

The underlying proceeding is a forcible detainer action that is on appeal to the county court at law. By petition for writ of mandamus, relator, Rosario Gallegos, seeks to compel the county court at law to vacate its order: (1) denying her motion to dismiss for want of subject matter jurisdiction; and (2) granting a writ of possession for property in favor of the real party in interest, Jose Eloy Vela. Gallegos contends that the county court lacked jurisdiction over Vela's forcible detainer action because of a pending title

dispute over the property in district court. We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

By warranty deed in 1999, Edward Pyle conveyed an interest in real property to Vela. The warranty deed stated that the property being conveyed included any improvements and did not constitute homestead. The real estate note agreement underlying the transaction provided that: Vela would loan $45,000 to Pyle, Vela would obtain clear title to the property, the parties would sign the note, and Pyle would "let" a title company give Vela a clear title to the property. The note provided that Pyle agreed to pay the property taxes, property liens, closing costs, the "cost" of clear title, the "private loan" between Vela and Pyle, and "if applicable, filing and recording fees" from the $45,000 loan. Pyle further agreed to "pay to [Vela] or assigns monthly payments paid to the [First National Bank] for 20 years or until the $45,000[] is paid in full." Under the agreement, Pyle or assigns retained "the right to lease and convert the property into a funeral home . . . for $10,000[] at $41.66 and $83.00 property tax or till paid."[1]

Under the note, Vela agreed to lease the property to Pyle "for $10,000[] or until the note is paid in full." The note agreement prohibited Vela from using the property as collateral, using the property to "retain" loans, or selling the property while timely lease payments and loan payments were being made. Vela agreed to "hold said property in trust until the Bank Loan/Note and $10,000[] is paid in full." The note provided that Vela would transfer title to Pyle when the $45,000 was paid to the bank in full, and that Vela "may foreclose on the property herein described" in the event that Pyle or assigns "do

---

[1] The record is unclear as to the meaning of the note's provision regarding payments of "$41.66 and $83.00 property tax or till paid."

2

not make timely lease payment[s] and timely Bank Loan/Note payment." The note further provided that Vela "will have the $45,000[] within 10 days of signing this agreement, within 10 days of signing this agreement [sic] become null and void."

In 2002, Pyle sold the property to Gallegos by bill of sale and assignment of rights and transferred the property to Gallegos by quitclaim deed. According to the underlying pleadings, Gallegos "began living on the property in 2002 and lived with Mr. Pyle as his wife until he passed away in 2007." The assignment from Pyle to Gallegos expressly includes right, title, and interest in the name "La Blanca Kountry Funeral Home."

In 2012, Vela filed a complaint for forcible detainer against "Edward Pyle and Occupants" in justice court. The justice court granted the defendants' motion to dismiss for lack of jurisdiction.

Vela appealed the dismissal to the county court. While the appeal was proceeding in county court, in May 2013 Gallegos filed a separate suit to quiet title in district court alleging that the warranty deed and note agreement were void and illegal. In August 2013, Gallegos filed a motion to dismiss the county court case on grounds that the county court lacked jurisdiction because the title dispute in the district court had to be resolved before the issue of possession in the county court could be addressed. On September 19, 2013, the county court denied the motion to dismiss and granted Vela a writ of possession. The matter had been set for trial in county court in October 2013.

This original proceeding ensued. By two issues, Gallegos contends: (1) that the county court's order of September 19, 2013, denying her motion to dismiss and granting

3

a writ of possession is void; and (2) the trial court failed to provide her with notice of a hearing on the merits of the forcible detainer action. We granted a stay of the underlying proceedings on September 24, 2013. This Court requested and received a response to the petition from Vela and also received a reply to the response from Gallegos.

## II. STANDARD OF REVIEW

Gallegos contends that the county court's order is void because it lacks jurisdiction over the case. Mandamus is proper if a trial court issues an order beyond its jurisdiction. *See In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding); *Bd. of Disciplinary App. v. McFall*, 888 S.W.2d 471, 472 (Tex. 1994) (orig. proceeding). Mandamus is available to correct a void order even if the order was appealable and the party requesting relief failed to pursue an appeal. *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973) (orig. proceeding). Where an order is void, the relator need not show it did not have an adequate appellate remedy and mandamus relief is appropriate. *See In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding); *In re Union Pac. Res., Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (orig. proceeding).

Gallegos further contends that the trial court abused its discretion by failing to give notice that the hearing on the plea and motion to dismiss encompassed the right of possession, particularly since trial on the merits was scheduled some months in advance of the hearing on the plea and motion to dismiss. A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding).

4

This standard is satisfied where the trial court effectively deprives the relator of the fundamental due process right to notice and a hearing. *See Union Carbide Corp. v. Moye*, 798 S.W.2d 792, 793 (Tex. 1990) (orig. proceeding); *In re Acceptance Ins. Co.*, 33 S.W.3d 443, 448 (Tex. App.—Fort Worth 2000, orig. proceeding); *see also In re Hamilton*, No. 12-13-00080-CV, 2013 WL 2456499, at *1 (Tex. App.—Tyler June 5, 2013, orig. proceeding) (mem. op.).[2]

### III. FORCIBLE DETAINER

Gallegos's first issue contends that the county court's order of September 19, 2013 denying the motion to dismiss and granting a writ of possession in favor of Vela is void. This issue is premised on the jurisdictional limitations applicable to forcible detainer actions. In response, Vela asserts, inter alia, that Gallegos failed to provide a complete record, including a copy of a lease between Vela and Pyle;[3] that the lease provided sufficient evidence of Vela's ownership to demonstrate that he has a superior right to immediate possession; and that forcible detainer actions can be brought and prosecuted concurrently with suits to try title in district court.

---

[2] In his statement of jurisdiction, Vela appears to contend that we should deny the petition for writ of mandamus on grounds that Gallegos failed to post a bond as required by the Texas Property Code. *See* TEX. PROP. CODE ANN. § 24.007(a) (West Supp. 2013) (allowing a judgment of a county court in an eviction suit to be stayed on appeal if the appellant files an appropriate and timely supersedeas bond). However, this section of the property code, by its express terms, applies to appeals and not original proceedings. *See id.* Accordingly, we proceed to address the merits of this case.

[3] Vela asserted that Gallegos failed to file certified or sworn copies of relevant documentation with her petition for writ of mandamus. *See* TEX. R. APP. P. 52.3(k), 52.7. Any alleged deficiencies in these filings have subsequently been corrected by Gallegos by way of a supplemental affidavit. *See, e.g., Humphreys v. Caldwell*, 881 S.W.2d 940, 943 (Tex. App.—Corpus Christi 1994, no writ). Moreover, to the extent that Vela asserts that Gallegos failed to provide "the entire record of the proceeding," we note that Gallegos's appendix and record included those materials required by the appellate rules and the alleged omissions did not render the appendix or record misleading. *See* TEX. R. APP. P. 52.11. In short, Gallegos met her burden to provide a record sufficient to show her entitlement to mandamus relief. *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding); *In re Davidson*, 153 S.W.3d 490, 491 (Tex. App.—Amarillo 2004, orig. proceeding); *see generally* TEX. R. APP. P. 52.3, 52.7.

5

The forcible detainer action is the procedural vehicle by which the right to immediate possession of real property is determined. *Ward v. Malone*, 115 S.W.3d 267, 270 (Tex. App.—Corpus Christi 2003, pet. denied). Such an action is intended to be a speedy and inexpensive means for resolving the question of who is entitled to immediate possession of property without resorting to an action upon title. *Harrell v. Citizens Bank & Trust Co.*, 296 S.W.3d 321, 325 (Tex. App.—Texarkana 2009, pet. dism'd); *Falcon v. Ensignia*, 976 S.W.2d 336, 338 (Tex. App.—Corpus Christi 1998, no pet.). The only issue in a forcible detainer action is the right to actual possession of the premises. *Marshall v. Hous. Auth.*, 198 S.W.3d 782, 785–86 (Tex. 2006); *see* TEX. R. CIV. P. 746. In cases of forcible entry or forcible detainer, the "merits of the title shall not be adjudicated." TEX. R. CIV. P. 746; *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 434 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In keeping with the foregoing prohibition against the adjudication of title in a forcible detainer action, a justice court is expressly deprived of jurisdiction to determine or adjudicate title to land. *See* TEX. GOV'T CODE ANN. § 27.031(b)(4) (West Supp. 2013).

By statute, a justice court has jurisdiction over a forcible detainer action. *See* TEX. PROP. CODE ANN. § 24.004 (West Supp. 2013). From the justice court, a forcible detainer suit may be appealed to the county court for a de novo review. *See* TEX. R. CIV. P. 749; *Hong Kong Dev., Inc.*, 229 S.W.3d at 433–34. The appellate jurisdiction of the county court is confined to the jurisdictional limits of the justice court. *Salaymeh v. Plaza Centro, LLC*, 264 S.W.3d 431, 435 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Hong Kong Dev., Inc.*, 229 S.W.3d at 434. Therefore, neither the justice court nor

6

a county court on appeal can resolve questions of title beyond the immediate right to possession.  *See Bacon v. Jordan*, 763 S.W.2d 395, 396 (Tex. 1988).

A forcible detainer action is cumulative, not exclusive, of other remedies a party may have in the courts of this State, including a suit to try title.  *Salaymeh*, 264 S.W.3d at 435–36; *Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.); *see Scott v. Hewitt*, 90 S.W.2d 816, 818–19 (Tex. 1936).  The displaced party is entitled to bring a separate suit in the district court to determine questions of title.  *Salaymeh*, 264 S.W.3d at 435–36.  Accordingly, forcible detainer suits in justice court may run concurrently with an action in another court even if the other action involves adjudication of matters that could result in a different determination of possession from the decision rendered in the forcible detainer suit.  *Id.*; *Hong Kong Dev. Inc.*, 229 S.W.3d at 437.  However, where the right to immediate possession necessarily requires resolution of a title dispute, a justice court has no jurisdiction to enter a judgment.  *Rice*, 51 S.W.3d at 709.  In other words, a justice court is not deprived of jurisdiction because there is a title dispute; it is deprived of jurisdiction only if resolution of a title dispute is a prerequisite to determination of the right to immediate possession.  *See id.*  Whether an existing title dispute deprives the justice and county courts of jurisdiction to adjudicate possession in forcible detainer actions generally turns on whether there is a basis, independent of the claimed right to title, for the plaintiff's claim of superior possession rights in the property.  *See Villalon v. Bank One*, 176 S.W.3d 66, 71 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Chinyere v. Wells Fargo Bank, N.A.*, No. 01-11-00304-CV, 2012 WL 2923189, at *3 (Tex. App.—Houston [1st Dist.] July 12, 2012, no pet.) (op.).

7

Courts have concluded that several different factual scenarios generally require the resolution of title as a prerequisite to determination of possession. Familial disputes over property rights generally require the initial resolution of title. *See, e.g., Pina v. Pina*, 371 S.W.3d 361, 365–66 (Tex. App.—Houston [1st Dist]. 2012, no pet.) (explaining that the district court had jurisdiction over the determination of the right to immediate possession of property between four siblings, where their mother had deeded the property to two of the four children, because the issue necessarily required a resolution of the title dispute between the children); *Geldard v. Watson*, 214 S.W.3d 202, 208–09 (Tex. App.—Texarkana 2007, no pet.) (holding that the justice court lacked jurisdiction over a forcible detainer suit because the disagreement over the right of possession, which arose from a familial dispute over homestead rights in property, "necessarily required an adjudication of the merits of title"). Similarly, claims regarding adverse possession typically involve the preliminary determination of title disputes. *See, e.g.*, *Gibson v. Dynegy Midstream Servs., L.P.*, 138 S.W.3d 518, 524 (Tex. App.—Fort Worth 2004, no pet.) (concluding that the issue of title raised by a party's claims of adverse possession was "integrally linked" to the issue of possession); *Gentry v. Marburger*, 596 S.W.2d 201, 203 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (holding that the justice court lacked subject-matter jurisdiction over a forcible detainer suit where the pleadings raised the issue of title by adverse possession and thus "title to premises was directly involved").

The resolution of the issue regarding whether a forcible detainer case can proceed concurrently with a title dispute or whether title has to be resolved as a preliminary matter is more complicated in situations regarding the purchase and sale or

lease of a property. In general, cases have held that where the relationship between the parties in a forcible detainer suit is that of buyer and seller only, the determination of the right to immediate possession of the property necessarily requires resolution of the title dispute. *See, e.g., Dass, Inc. v. Smith*, 206 S.W.3d 197, 200–01 (Tex. App.—Dallas 2006, no pet.) (concluding that the determination of the right to immediate possession of property necessarily required a resolution of a title dispute, and jurisdiction properly belonged in the district court, where there was evidence that a landlord-tenant relationship had ended and a buyer-seller relationship had begun); *see also Chinyere*, 2012 WL 2923189, at *5 (holding that the justice and county court lacked subject matter jurisdiction where the claim for possession of property rested solely on the claim to title based on the sale of the property).

In contrast, where the relationship between the purchaser and seller of real property encompasses the landlord and tenant relationship, even where such a relationship occurs in the context of a sale of property, the issue of immediate possession can typically be determined without first necessarily determining the issue of title. *See, e.g., Morris v. Am. Home Mortg. Serv.*, 360 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that a deed of trust containing language establishing a landlord-tenant relationship between the borrower and the purchaser provided a basis to resolve competing claims to possession without resolving the title dispute between the parties); *Bruce v. Fed. Nat. Mortg. Ass'n,* 352 S.W.3d 891, 893 (Tex. App.—Dallas 2011, pet. denied) ("Here, the Deed of Trust contains a provision that creates a landlord-tenant relationship, and this relationship 'provides an independent basis on which the trial court could determine the issue of immediate

9

possession without resolving the issue of title to the property.'"); *see also Black v. Washington Mut. Bank*, 318 S.W.3d 414, 418 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd w.o.j.); *Yarto & DTRJ Invs., L.P. v. Gilliland*, 287 S.W.3d 83, 89 (Tex. App.—Corpus Christi 2009, no pet.); *Elwell v. Countywide Home Loans, Inc.*, 267 S.W.3d 566, 569 (Tex. App.—Dallas 2008, pet. dism'd w.o.j.); *Villalon*, 176 S.W.3d at 71; *Rice*, 51 S.W.3d at 712–13; *see also Weatherbee v. GMAC Mortgage, LLC*, No. 01-11-00546-CV, 2012 WL 1454494, at *3 (Tex. App.—Houston [1st Dist.] Apr. 26, 2012, pet. dism'd w.o.j.) (mem. op.).

## IV. ANALYSIS

Gallegos contends that the county court did not have jurisdiction over Vela's forcible detainer cause of action because of the pending title dispute in district court. As stated previously, the county court is deprived of jurisdiction if resolution of a title dispute is a prerequisite to the determination of the right to immediate possession. *See Rice*, 51 S.W.3d at 709. In contrast, Vela asserts that the leasehold relationship between the parties provided an independent basis for the trial court to determine the right to immediate possession without resolution of the title issues.

While we agree with Vela that a leasehold relationship typically establishes an independent basis for the county court to determine possession without the prerequisite resolution of a title dispute, we disagree with Vela's assertion that the resolution of this case is controlled by that doctrine. The facts and argument presented here render this proceeding distinguishable from those cases concluding that a landlord-tenant relationship provides an independent basis to determine possession. Specifically, the alleged landlord-tenant relationship between Vela and Pyle does not provide an

10

independent basis for determination of possession because Gallegos contends that the transaction itself was void. According to Gallegos, Pyle's transfer of the property in exchange for a loan to Vela, with a right to buy back the real property on repayment, is prohibited by the Texas Constitution and the pretended sale of the homestead was void. *See* TEX. CONST. art. XVI, § 50(c); *Johnson v. Cherry*, 726 S.W.2d 4, 6 (Tex. 1987).

Agreements executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together*. In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding); *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex.1984) (citing *Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981)); *Nevels v. Harris*, 102 S.W.2d 1046, 1048 (Tex. 1937) (stating that a deed of trust and notes for principal and interest should be treated as one contract because the borrowers executed the documents at the same time and for the same purpose of obtaining a loan secured by the real property); *Nat'l City Bank of Indiana v. Ortiz*, 401 S.W.3d 867, 884 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In this case, the real estate note agreement, the warranty deed, and the lease were all allegedly executed on August 19, 1999. The real estate note agreement, which underlies the transfer of title and Vela's right to "foreclose" on the property, included provisions allegedly establishing the lease between Vela and Pyle. The lease at issue in this case contains provisions that clearly implicate the transfer of title. Under the lease, Pyle retained the option to "buy back the house," Vela had the right to declare the lease forfeited and to repossess the premises if Pyle defaulted in his obligations, Vela would have "clear title" to the property, the "sole purpose for [Vela] to hold the deed of said property is to borrow the

11

said monies," and "upon final payment on bank note the house will be return[ed] to the lessee."

In short, there is no leasehold that is independent of the claimed right to title that would buttress Vela's claim of superior possession rights in the property. As part of the same transaction, the lease would also be necessarily void under Gallegos's claims. Vela's claims for possession cannot be separated into claims based on his alleged disparate positions as both lessor and owner of the property. Thus, we agree with Gallegos that the right to immediate possession of the property necessarily required a resolution of the title dispute. Accordingly, the forcible detainer suit and the title suit could not proceed concomitantly. *See, e.g., Dass, Inc.*, 206 S.W.3d at 200–01; *Rice*, 51 S.W.3d at 709; *see also Chinyere*, 2012 WL 2923189, at **4–6. Because the right to immediate possession of the property necessarily required resolution of the title dispute, the county court had no jurisdiction to enter a judgment regarding the right to possession. *See Rice*, 51 S.W.3d at 709. The trial court's order of September 19, 2013, denying Gallegos's plea and granting a writ of possession in favor of Vela, was void. *See id.* We sustain Gallegos's first issue. Having sustained her first issue, we need not address her second issue regarding the deficiency of the notice of the hearing on possession. *See* TEX. R. APP. P. 47.4.

## V. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that Gallegos has met her burden to obtain mandamus relief. Accordingly, the stay previously imposed by this Court is lifted. *See* TEX. R. APP. P. 52.10(b) ("Unless

12

vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We conditionally grant Gallegos's petition for writ of mandamus. We are confident that the trial court will withdraw its order. The writ will issue only if the trial court fails to comply with this opinion.

                                                DORI CONTRERAS GARZA,
                                                Justice

Delivered and filed the
13th day of November, 2013.